**In re GRAND JURY WITNESS.**

**Richard J. SALAS, Appellant,**

v.

**UNITED STATES of America, Appellee.**

**In re GRAND JURY WITNESS.**

**Shelly WAXMAN, Appellant,**

v.

**UNITED STATES of America, Appellee.**

**Nos. 82–4631, 82–4632.**

United States Court of Appeals,
Ninth Circuit.

Submitted Nov. 19, 1982.
Decided Dec. 21, 1982.

Richard J. Salas, pro se.

Shelly Waxman, pro se.

Ralph L. Rogers, Kettering, Ohio, for Waxman.

Donald B. Ayer, U.S. Atty., Sacramento, Cal., Holly Abery-Wetstone, William A. Whitledge, James P. Springer, Glenn L. Archer, Jr., Washington, D.C., Ted Cassman, Ephraim Margolin, San Francisco, Cal., for United States.

Before GOODWIN, FERGUSON and CANBY, Circuit Judges.

PER CURIAM:

The government issued subpoenas duces tecum to two attorneys representing targets of a grand jury investigation. The attorneys appeal from a district court order finding them in contempt for their refusal to provide certain documents relating to their employment by the targets. We find that the subpoenas may intrude into areas protected by the attorney-client privilege and we are accordingly obliged to partially modify the judgment of contempt.

### FACTS

For several months the federal grand jury in Fresno has been investigating the affairs of Paul Bell, the Belanco Religious Order, Chemical Supply Company, Jerry Mitchell, and Virginia Mitchell. The Belanco Religious Order is a tax protest organization espousing the belief, inter alia, that payment of income taxes is immoral and voluntary.

In connection with this investigation the government issued subpoenas to appellants Waxman and Salas, attorneys representing the several named grand jury targets.[1] The subpoenas called for each to appear before the grand jury with the following documents:

1. Accounts receivable relating to Paul E. Bell, Jr., Jerry Mitchell, Virginia Mitchell, Belanco Religious Order, and Chemical Supply Company, Inc., including ledgers, for the period January 1, 1976 to December 31, 1981.

2. Time records which describe the amount of time spent by Shelly Waxman performing services for Paul E. Bell, Jr., Jerry Mitchell, Virginia Mitchell, Belanco Religious Order, and Chemical Supply Company, Inc., for the period January 1, 1976 to December 31, 1981.

3. Copies of all statements, bills, receipts and payments made by and for Paul E. Bell, Jr., Jerry Mitchell, Virginia Mitchell, Belanco Religious Order, and Chemical Supply Company, Inc., relating to attorney services for the period January 1, 1976 to December 31, 1982.

---

1. These attorneys are apparently principals in an organization known as the "National Law Association of Shelly Waxman and Associates," a group of lawyers providing services to the "tax protest" movement. We note that several members of this association have been disciplined or admonished by this court for disregard of court rules and orders, dilatory procedures, or other negligent or unprofessional conduct.

4. Retainer contracts, letters of understanding, and letters of agreement for Paul E. Bell, Jr., Jerry Mitchell, Virginia Mitchell, Belanco Religious Order, and Chemical Supply Company, relating to the creation and continuation of an attorney-client relationship for the period January 1, 1976 to December 31, 1981.

5. Complete description of the form of payment (check number, cashier's check number, denomination of cash, traveler's check number, etc.) for all payments made by Paul E. Bell, Jr., Jerry Mitchell, Virginia Mitchell, Chemical Supply Company and the Belanco Religious Order for the period January 1, 1976 through December 31, 1981.

■ The attorneys filed a motion to quash the subpoenas on a variety of legal grounds, including the attorney-client privilege.[2] The government opposed the motion to quash and filed a written memorandum of law. The district court held a hearing on the motion. Waxman and Salas did not present any evidence relating to the reasons for which the clients sought their legal advice, nor were there any offers of proof. After hearing oral argument the district court denied the motion to quash. Waxman announced an intent to appeal from the denial of the motion to quash, but the district court astutely expressed doubt as to the appealability of the order. With the consent of all parties, the court then conducted a brief contempt hearing based on Waxman's stated intent to refuse to comply with the subpoenas. The attorneys were then held in contempt and filed notices of appeal.[3] The district court stayed its judgment of incarceration pending the outcome of these appeals.[4]

The appeals were briefed under an expedited schedule and an amicus brief was also filed by the National Association of Criminal Defense Lawyers. Appellants suggested in their reply brief that this case be heard *en banc*. The suggestion is rejected as untimely. Fed.R.App.P. 35(c).

## THE ATTORNEY–CLIENT PRIVILEGE

[2] Appellants assert a blanket claim that all of the information demanded by the subpoenas is protected by the attorney-client privilege. In support of this claim they cite *In re Grand Jury Proceedings (Lawson),* 600 F.2d 215 (9th Cir.1979); *Baird v. Koerner,* 279 F.2d 623 (9th Cir. 1960), and *In re Grand Jury Proceedings (Jones),* 517 F.2d 666 (5th Cir.1975). These cases, however, do not support such a broad conclusion. Each case recognizes the general rule that the identity of the client and the amount of the fee paid is *not* within the attorney-client privilege. A narrow exception is recognized only where revealing that information probably would incriminate a client on the same charges for which the client sought legal assistance. *In re Grand Jury Proceedings (Lawson),* 600 F.2d at 218;

---

**2.** The other theories urged included invasion of privacy under the California State Constitution, a First Amendment attack, the failure of the grand jury to "authorize" the subpoenas, self-incrimination, and others. These were all totally unsupported by law or by the facts in this case, and were properly rejected by the district court in a thoughtful memorandum order.

**3.** In the proceedings below, and in his briefs in this court, Waxman has steadfastly claimed that this is an appeal from the denial of his motion to quash, and not from the judgment of contempt under 28 U.S.C. § 1826. Such orders, however, are not appealable by the party from whom documents or testimony is sought. *United States v. Ryan,* 402 U.S. 530, 532, 91 S.Ct. 1580, 1581, 29 L.Ed.2d 85 (1971); *Cobbledick v. United States,* 309 U.S. 323, 60 S.Ct. 540, 84 L.Ed. 783 (1940); *Lampman v. U.S.*

District Court, 418 F.2d 215 (9th Cir.1969). The party subpoenaed must be held in contempt before the issue is ripe for appellate review. *Id.* Because Salas and Waxman were held in contempt and subsequently filed a notice of appeal "from the ruling of October 26, 1982" we have jurisdiction under 28 U.S.C. §§ 1291 and 1826.

**4.** Although the recalcitrant witness statute normally requires disposition in such appeals within 30 days, 28 U.S.C. § 1826(b), the time limit is exceeded by publication of this opinion. This is permissible when incarceration has been stayed pending appeal and where neither party is harmed by the delay. *See In re Federal Grand Jury Witness (Lemieux),* 597 F.2d 1166 (9th Cir.1979).

*Baird v. Koerner,* 279 F.2d at 630; *In re Grand Jury Proceedings (Jones),* 517 F.2d at 670–71. *See also United States v. Sherman,* 627 F.2d 189, 191 (9th Cir.1980); *United States v. Hodge and Zweig,* 548 F.2d 1347, 1353 (9th Cir.1977), *citing* 8 J. Wigmore, Evidence § 2313 (McNaughton rev. 1961). Moreover, the burden is on the party asserting the privilege to explain how he fits within the exception. *United States v. Hodge and Zweig,* 548 F.2d at 1354.

■ Appellants have not carried this burden with respect to the amounts and form of attorney fees received. There was no testimony or evidence offered by Waxman or Salas below, *in camera* or otherwise, to explain how disclosure of the attorney fees or methods of payment would implicate their clients in the activity for which they sought legal advice. In view of the absence of proof on this issue the district court properly denied the motion to quash the subpoenas with respect to attorney fees.

■ The above conclusion does not, however, end our inquiry in this particular case. The subpoenas quoted above demanded more than the amount of attorney fees and manner of payment. The government sought attorney time records describing the services performed by the attorneys, retainer agreements, contracts, letters of agreement, and related correspondence. We believe this type of demand to be an unjustified intrusion into the attorney-client relationship.

■ As a general proposition, the client's ultimate motive for litigation or for retention of an attorney is privileged. *In re Grand Jury Proceedings (Jones),* 517 F.2d 666, 674–75 (5th Cir.1975); *see* 8 J. Wigmore, Evidence § 2313 (McNaughton Ed. 1961). Confidential communications between attorney and client made in order to obtain legal assistance are likewise privileged. *Fisher v. United States,* 425 U.S. 391, 403, 96 S.Ct. 1569, 1577, 48 L.Ed.2d 39 (1976), *citing* 8 J. Wigmore, Evidence

§ 2292. Accordingly, correspondence between attorney and client which reveals the client's motivation for creation of the relationship or possible litigation strategy ought to be protected. Similarly, bills, ledgers, statements, time records and the like which also reveal the nature of the services provided, such as researching particular areas of law, also should fall within the privilege.[5] On the other hand, a simple invoice requesting payment for unspecified services rendered reveals nothing more than the amount of the fee and would not normally be privileged (unless the *Baird* exception is properly raised, as discussed *supra.*)

■ Application of these distinctions is not possible on the record now before us. The government's subpoena was met by blanket assertions of privilege, which are extremely disfavored, *United States v. Cromer,* 483 F.2d 99, 102 (9th Cir.1973), *United States v. Davis,* 636 F.2d 1028, 1044 n. 20 (5th Cir.1981), and by a host of other, frivolous defenses. The proper procedure for asserting the attorney-client privilege as to particular documents, or portions thereof, would have been for appellants to submit them *in camera* for the court's inspection, providing an explanation of how the information fits within the privilege. This way the court can issue a protective order with respect to any privileged portions before they are turned over to the grand jury.

Although Waxman made no attempt to demonstrate in any specific way that any of the particular documents sought fell within the ambit of the privilege, the issues here presented are important and relatively novel, and we will allow appellants to make the required showing on remand, as was done in *United States v. Davis,* 636 F.2d at 1044 n. 20. Equally appropriate is the Fifth Circuit's admonition: "Future litigants who make only blanket assertions of privilege at enforcement proceedings should not expect such grace." *Id.*

*See Matter of Fischel,* 557 F.2d 209, 211 (9th Cir.1977), *quoting* 8 J. Wigmore, Evidence § 2292.

---

5. These observations naturally imply that the other relevant requirements for raising the privilege, such as confidential intent and non-disclosure to third parties, are also satisfied.

## OTHER ARGUMENTS

Appellants raise several other issues on appeal.[6] They assert that the subpoenas violate the Sixth Amendment and also that the subpoenas were void because the grand jury did not vote to authorize them. No authority is cited for these groundless propositions and they were properly rejected by the district court. Appellants argue that the subpoenas seek a list of members of the Belanco Religious Order, in violation of First Amendment principles. Although an earlier version of the subpoenas may have produced such disclosures, appellants have inexcusably failed to provide copies of the subpoenas at issue in their Excerpt of Record, as required by Ninth Circuit Rule 13. We therefore only have before us the language provided in the government's brief, quoted above. Accordingly, we perceive no First Amendment problem on the record presented.

Appellants finally attack the constitutionality of 28 U.S.C. § 1826(b), which requires recalcitrant witness appeals to be decided within 30 days, as an impermissible legislative interference in the court's internal procedures. We note, however, that the case was fully briefed, including an amicus brief,[7] within the time allowed under the statute and we therefore decline to reach the constitutional claim.

Amicus National Association of Criminal Defense Lawyers alleges in its brief that these subpoenas represent part of a nationwide pattern of prosecutorial abuse, directed at attorney-client relationships. They confess that the record here contains no facts to support such a conclusion, but they urge a remand for a full evidentiary hearing on this subject. While we are concerned about the possibility of such abuse, *see* Zwerling, *Federal Grand Juries v. Attorney Independence and the Attorney Client Privilege*, 27 Hastings L.J. 1263

(1976), we believe the proper solution is a careful balancing in each case by the trial court of the government's need for every person's evidence versus the important policies of confidentiality behind the attorney-client privilege, to be performed as we have outlined herein.

## CONCLUSION

The district court's judgment as to subpoena item number 5, finding appellants without "good cause" under 28 U.S.C. § 1826(a) for refusing to comply, is affirmed. As to the other items, the matter is remanded to permit appellants to assert the attorney-client privilege *in camera* as to the individual documents requested. If appellants fail to do so in a prompt manner they may then be held in contempt.

AFFIRMED IN PART AND REMANDED IN PART.

---

**6.** Although there was a Fifth Amendment argument raised in the district court, it has not been urged on appeal and we therefore express no opinion as to whether this type of subpoena infringes the Fifth Amendment rights of either the clients or the attorneys themselves.

**7.** The court also received a motion from one Ralph L. Rogers, seeking leave to file an amicus

brief. The motion failed to identify Rogers or his interest in the case and was therefore denied. Fed.R.App.P. 29. Similarly, the court received an amicus brief from one Mohammed Jafree (a member of Waxman's Association) after briefing was completed and the case was submitted. The motion to file that brief is also denied as untimely under Fed.R.App.P. 29.